UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

DREW W. PETERSON,              )
                               )
              Plaintiff,       )    Case No. 1:09-cv-06746
                               )
                               )    Hon. Ronald A. Guzman
                               )    U.S. District Judge
                               )
         v.                    )    Hon. Nan R. Nolan
                               )    Magistrate Judge
JPMORGAN CHASE BANK, NA,       )
d/b/a "CHASE",                 )
              Defendant.       )

## AMENDED COMPLAINT

NOW COMES the Plaintiff, DREW W. PETERSON ("PETERSON"), by his attorney, WALTER P. MAKSYM, JR., and complains of the Defendant, JPMORGAN CHASE BANK, NA d/b/a "CHASE" ("CHASE"), alleging as follows:

### Nature of the Action

1.   PETERSON brings these actions against the CHASE to recover damages, declaratory, equitable, and other relief under Regulation Z of the Truth in Lending Act ("TILA" or the "Act"), 15 U.S.C. § 1647, 12 C.F.R. § 226.5b ("Regulation 'Z'"), and Illinois statutory and common law.

### Jurisdiction and Venue

2.   This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2). On information and belief, the aggregate of these claims exceeds the sum or value of $75,000.00. The Court also has federal question subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises in part under Regulation Z of TILA, 15 U.S.C. § 1647, 12 C.F.R. § 226.5b. The Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

## Venue

3.   That venue in the Northern District of Illinois, Eastern Division is proper pursuant to 28 U.S.C. § 1391(a) in that PETERSON'S claims arose within this District and Division out of a wrongful conduct herein complained of that occurred in the County of Will, State of Illinois, as is hereinafter more particularly alleged he is a citizen of and resides in Will County, Illinois and the CHASE does business and maintains offices within this District.

4.   On information and belief, CHASE is a national banking association whose main offices are in Ohio, and is considered a citizen of Ohio for the purposes of diversity jurisdiction under 28 U.S.C. § 1348 in *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006*)*.

5.   Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) as a substantial part of the events, circumstances, and omissions giving rise to these claims occurred in this District. CHASE'S conducts significant lending and lending-related business in this District. Venue is also proper in this District under 28 U.S.C. § 1391(c).

## Parties

6.   That at all times relevant PETERSON was an active or retired Village of Bolingbrook Illinois sworn police officer, having attained the rank of Sergeant, who maintained his primary residence at 6 Pheasant Chase Court, Bolingbrook, County of Will, State of Illinois (the "subject property" - "residence").

7.   That, on information and belief, at all times relevant, CHASE was a national banking association with its main office located at 1111 Polaris Parkway, Columbus, Ohio, and a leading global financial services firm with assets of

approximately two (2) trillion dollars and operations in more than sixty (60) countries. CHASE is a leader in investment banking, financial services for consumers, small business and commercial banking, financial transaction processing, asset management, and private equity. A component of the Dow Jones Industrial Average, CHASE (NYSE: JPM) serves millions of consumers in the United States and many of the world's largest corporate, institutional and government clients under its JPMorgan and CHASE brands.

### Nature of the Claim

8. This case concerns CHASE'S illegal suspension and consequent reduction of credit limit on PETERSON'S home equity line of credit ("HELOC") by breaching its contractual promises to PETERSON as an HELOC account holder and borrower, by freezing his HELOC without first reasonably having a sound factual basis therefore in violation of Federal and State law.

9. PETERSON has instituted this cause so that this Court may, *inter alia*, determine, declare, adjudge, and decree:

(a) whether PETERSON'S HELOC agreement terms imposed contractual obligations on CHASE to have a sound factual basis before lowering his HELOC limits due to a supposed significant and factually sound "material change" in his "financial condition";

(b) whether CHASE'S suspension a total reduction of the PETERSON'S credit limit on his HELOC was unfair and unlawful;

(c) whether CHASE gave lawful and fair notice to PETERSON that his HELOC was being lawfully suspended and reduced based on pre-textual or specific factually sound reason of an actual "material change" in his "financial condition";

(d) whether CHASE'S conduct constitutes immoral, unethical, or unscrupulous business practices under the Illinois

3

Consumer Fraud and Deceptive Business Practices Act or constitutes common law fraud; and

(e) whether PETERSON is entitled to relief, and the nature of such relief.

<h3 align="center">Facts Common to All Counts</h3>

10. That PETERSON applied for, was approved by, and obtained a HELOC from CHASE on or about May 18, 2005 in the amount of Two Hundred Twenty Thousand ($220,000.00) Dollars secured by a mortgage on the subject property that was duly recorded with the Will County Recorder of Deeds on June 6, 2005 as Document Number R2005094431 (the "HELOC" attached hereto as Exhibit "A".)

11. That PETERSON is currently being held and awaiting trial in a Will County Sheriff's Adult Detention Facility in Joliet, Illinois on and unable to make a Twenty Million Dollar ($20,000,000.00) bail pursuant to an Arrest Warrant issued by the Circuit Court of the Nineteenth Judicial District Court of Illinois executed on May 7, 2009 entered in the pending and undetermined matter of *People of the State of Illinois v. Drew Walter Peterson*, Case No. 09 CF 1048 (the "Criminal Case"). PETERSON is currently awaiting trial in the criminal case on a Bill of Indictment charging two counts of First Degree Murder of his late wife, Kathleen Savio (the "late wife"), alleged to have been committed on or about February 29, 2004 brought under 720 ILCS 5/9-1(a)(1) and 720 ILCS 5/9-1(a)(2)(the "Felony Charges") (See Exhibit "B" attached). PETERSON has pled not guilty to the felony charges, has not been found guilty, has not been sentenced, and must, therefore, for all intents and purposes, be presumed innocent until and unless convicted upon a verdict rendered by a jury of his peers and the exhaustions of any and all appeal and remedies relating thereto.

4

12. That, thereafter, having his subject property so pledged and encumbered, PETERSON drew on the HELOC to help pay his home, family, personal, and legal expenses. He repaid it all back in its entirety prior to May 15, 2009. Then, by a letter dated May 15, 2009 (the "Freeze Letter"), CHASE sent to PETERSON a freeze letter signed by "Sincerely, Chase Credit Line Review" notifying him, stating, *inter alia*, that it "suspended further advances against [his] line, effective immediately, because of a material change in [his] financial condition as noted below. Access to [his] account by check, card or other device [was] also suspended. … The specific reason for this action is: imprisonment." (the "Suspension" — "Freeze"). (See Exhibit "C" attached) See also copies of the Affidavits of Orest Lechnowsky, CHASE'S Vice-President and Assistant General Counsel (Exhibit "D" attached), Christine Greigo, CHASE'S Investigative Specialist (Exhibit "E" attached), Michael Dunn, CHASE'S Vice-President and Branch Manager of the its Naperville Hobson Branch (Exhibit "F" attached), and Keith McLendon, CHASE'S Vice-President and Assistant General Counsel (Exhibit "G" attached). CHASE'S suspension followed and was based upon, as said freeze letter and affidavits show, PETERSON'S indictment and arrest on or about May 7, 2009 pursuant to a warrant issued on or about that date for the alleged said felony charges. PETERSON'S HELOC has remained frozen to date, thereby effectively having reduced his line of credit to $0.00 ("zero").

13. The CHASE freeze letter did not disclose the "material change in his "financial condition", summarily and immediately suspended PETERSON'S "access to [his] account by check, card or other device" due to, what it, CHASE, described the "specific reason(s) for …[its] action … [to have been] his "imprisonment". (the "Reason") (See Exhibit "C") Contrary to CHASE's knee-jerk,

one-word wrong and insufficient reason, the U.S. Supreme Court recently reaffirmed the long established distinction between mere pre-trial detention and "imprisonment". "Jail is a "local government's detention center where persons awaiting trial ... are confined." *Black's Law Dictionary* 910 (9th ed. 2009). Prison, by contrast, is a "state or federal facility of confinement for convicted criminals, esp. felons." Id., at 1314." *Maryland v. Shatzer*, 559 U. S. __ (Slip Opinion p. 7 fn. 2, Feb. 24, 2010)

14. That, the material terms and conditions of PETERSON'S HELOC AGREEMENT, CHASE agreed, *inter alia*, to provide PETERSON a maximum $220,000.00 HELOC for a period of twenty (20) years, provided that, *inter alia*, there was no unfavorable "material change" in his "financial condition". (See Exhibit "A")

15. That at all times relevant, PETERSON'S residence was, and remains, free and clear of any first mortgage, debt, lien or encumbrance, save only the his HELOC recorded by CHASE as a "Deed of Trust/Mortgage" with the Will County Illinois Recorder of Deeds Office on June 8, 2005 as document number R2005094431. (See Exhibit "A")

16. That following PETERSON'S retirement in early November 2007 from the Bolingbrook Police Department, the Bolingbrook Police Pension Board voted on November 15, 2007 to allow him to collect his pension benefits in the amount of $6,067.71 per month (the "Pension") since his retirement date, finding that by law his pension benefits could not be denied or limited in any way, as he had not been convicted of a crime. Accordingly, PETERSON has received, is receiving, and will be entitled to receive said pension payments, with increases, for life.

17. That in addition his pension, PETERSON has received, and is receiving for the benefit of his and his late wife's two

son's and their living expenses monthly Social Security benefits
of approximate $2,758.00 per month (the "Social Security
Benefits"). By reason of the receipt of said social security
benefits in the combined monthly sum of approximately $8,826.00,
that may be used for their family residential, household and
living expenses no unfavorable "material change" in his
"financial condition" ever occurred since his application for
and CASE'S issuance of his HELOC in 2005.

18. That there has been no material in Peterson's assets in
that he has substantially same assets now as the time of CHASE's
approval and issuance of his 2005 HELCO, to wit: the
unencumbered residence, an SUV, a motorcycle, household
furniture, furnishing and miscellaneous personal possessions.
Further, his personal and household expenses such as real estate
taxes, gas, water, electric, cable and other family expenses
have remained relatively constant since CHASE's approval and
issuance of his 2005 HELCO, except for his personal food,
clothing, grooming and other living expenses that have been
reduced due to their provision by the County of Will during his
confinement in the Will County Detention Facility since May 7,
2009.

19. PETERSON has disclosed to CHASE under terms of a
protective order his tax returns that show, in summary, that in
May of 2009, at the time of CHASE'S suspension of PETERSON'S
HELOC, he had vested Police Pension Fund 1099-R income of
$72,643.59, similar to his 2005 Police Wages of $73,840.00 plus
interest $93.00, plus refunds: $277.00 for a total income of
$74,210.00. Further, his 2008 vested Police Pension Fund 1099-R
income was $71,063.00 plus other miscellaneous wages of $678.00
for total income of $80,450.00, his 2007 vested Police Pension
Fund 1099-R income of $9,971.00 plus Police Wages $80,450 plus

interest income $28.00 for a total income of $90,449.00; his
2006 Police Wages of $81,642.00 miscellaneous income of
$1,082.00 plus interest income $362.00 plus refunds: $395.00
less one-half of self-employment tax of $77.00, for a total
income of $83,404.00. Moreover, his vested Police Pension Fund
for 2010 and subsequent years, until death, are expected to be
no less than those received during prior year, whether or not he
is acquitted or convicted of the criminal charges. Accordingly,
no unfavorable "material change" in his "financial condition"
ever occurred, and the only "material change" in PETERSON'S
"financial condition", if any, that occurred since his
application for and CASE'S issuance of his HELOC in 2005 was a
favorable one, in that his income actually *increased.*

20. PETERSON has no outstanding debt since April of 2009,
other than reoccurring modest living expenses for himself and
his minor children for whom he is responsible, that have been
disclosed to CHASE and are, approximately, personal, household
expenses and monthly utilities, to wit: municipal water: $81.95,
Comcast Cable $115.09; Sprint telephone: $210.19; Nicor Gas
$140.42; ComEd electric: $145.84; housing: no mortgage (other
than the CHASE zero balance HELCO), Will County real estate
taxes for 2009: $6,132.32; medical care covered by pension
retirement benefits, home and auto insurance, his children's
food provided by relatives or paid in substantially from his
income or in part from social security benefits for his and his
late wife's two sons; childcare: none. On information and
belief, from April 2009 to the present, litigation costs and
fees, including, without limitation, if any expert fees, cost
and expenses, i.e., attorneys fees and other legal services,
other legal services (e.g., paralegals, support staff, etc.),
fees and/or costs for investigators; fees and/or costs for

8

witnesses; fees and/or costs for court reporters; clerk filing
fees; service costs (e.g., costs for service of subpoenas); fees
and/or costs for copy services; travel expenses, hotel
accommodations, food expenses for attorneys and staff, and other
costs, if any, have been confidentially disclosed to CHASE
pursuant to protective order, have been paid and no other
attorneys fees, costs or expenses are due and owing through the
conclusion of the upcoming trial criminal case, His checking,
savings, or investment accounts from March 2009 to the present
have been  he holds with CHASE from March 2009 to the present.
Further, on information and belief, it is currently estimated
that approximately $45,000.00 will be needed to retain and pay
all necessary expert witnesses for said trial, a sum well within
the limits of his HELOC that he will clearly be able to repay in
connection with the terms thereof.

21.  PETERSON alleges, on information and belief, based
upon, *inter alia*, inquires and an investigation conducted by his
attorney, JOEL BRODSKY, that, except as to those allegations
pertaining to his and his said counsel personally, which are
alleged upon personal knowledge, that despite being informed
that his financial condition had not materially changed, but had
improved, CHASE intentionally refused to lift the suspension on
his HELCO and afford the credit he was qualified and legally
entitled to receive.

22.  PETERSON had a HELOC for which CHASE suspended the
available credit in a manner and for a reason that was illegal,
fraudulent, and unfair. As a result of CHASE'S wrongful and
illegal actions, PETERSON brings this for actual damages and
attorneys' fees under Regulation Z of the TILA (15 U.S.C. §
1640(a); 12 C.F.R. § 226.5b), damages for breach of contract,
damages for breach of the implied covenant of good faith and

fair dealing, damages, declaratory, injunctive and equitable
relief under the Illinois Consumer Fraud and Deceptive Business
Practices Act (815 ILCS 505/1 *et seq.* (2000)[the "ICFDBPA"), and
equitable relief under principles of common law.

23. CHASE purported reason for said suspension was pre-
textual and lacked a sound factual basis for summarily and
immediately suspended PETERSON'S HELOC. In so doing CHASE
knowingly and intentionally and unreasonably, unlawfully, and
falsely pretextual reason trigger its freeze PETERSON'S HELCO.
As a result, CHASE, in violation of federal law, suspended
PETERSON HELOC, not withstanding the fact that he then
sufficient ongoing monthly income from the sources and in the
amounts hereinafter specified to service his HELCO, and the
further fact that, he had not then nor since been convicted of
any crime nor been sentenced for anything, but rather had been
indicted for said felony charges.

24. That CHASE'S intentional, arbitrary suspension and
breach of PETERSON'S HELOC and absence of good and lawful reason
for said action, as well as its intentional concealment of the
its processes, standards, practices, real motives, and
requirements for reducing limits, suspending accounts, and
allowing reinstatement was and remains illegal. While federal
law permits CHASE and other lenders to reduce credit limits if
an individual borrower having secured a HELOC has had
significant decline income, i.e., a significant change in
financial condition, that had never occurred with respect to
PETERSON or his HELOC as shown above, it violates federal law to
reduce or suspend the credit limits of a HELOC account due to a
material change in his financial condition without first
determining and having a sound factual basis for reducing or
freezing his HELOC credit limit.

25.  CHASE'S   post-reduction   handling,   management   and administration  of  PETERSON'S  complaints,  inquiries,  protests, objections,  and  attempted  appeals  that  endeavored  to  inform CHASE that there had been no "material change" in his "financial condition"  were  likewise  unfair  and  illegal.  In  response  to PETERSON and his counsel's complaints, inquiries, protests, and attempted  appeals,  CHASE  withheld  and/or  failed  to  provide, accurate,  necessary  and  material  information,  including but not limited  to  what  it  had  stated  in  its  freeze  letter  was  a "material  change"  in  his  "financial  condition"  due  to  what  they mischaracterized  as  his  so  called  "imprisonment"  so  as  to  be required  for  reinstatement,  and/or  the  method  used  to  determine such  income.  This  information  is  material  and  needed  by PETERSON,  as  a  borrower  and  customer,  in  order  to  determine whether to appeal.

26.  CHASE'S HELOC suspension and reduction were not only fraudulent;  they  were  patently  unconscionable.  On,  on information  and  belief,  October  3,  2008,  Congress  passed  the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343. As part of this law, CHASE obtained, on information and belief,  approximately  $25  billion  from  an  unprecedented  seven hundred  (700)  billion  "bailout"  funded  entirely  by  American taxpayers.  The  rationale  advanced  for  the  "bailout"  by  its proponents  was  that  the  banks  needed  the  money  to  ensure liquidity  in  the  face  of  the  worsening  subprime  mortgage disaster. Discovery and production will needed because CHASE is in exclusive possession of documents, information, and data that will be needed to prepare and develop this case.

27.  Despite  CHASE'S  statements  to  Congress  to  the contrary, they have intentionally failed to meet its obligations to its customers and have intentionally deprived those customers

of crucial affordable consumer credit at a critical time, and in the case of PETERSON, at a time that he or anyone charged with a serious criminal offense or offenses would need to resort to its HOLOC in order to attempt bail (10% of the bond amount) or secure the services and representation of competent counsel of their choice to mount a credible defense to such charges.

28.   In stark contrast, CHASE'S HELOC borrowers, like most American consumers, are struggling in a faltering economy, yet they continue to, like PETERSON, meet their mortgage obligations. Customers such as PETERSON have incurred an increased price of credit, an inability to obtain desperately needed credit, and reduced credit scores, lost interest, cannibalization of their assets, and other damages such as, in the instant case, the inability to raise bail, maintain a credible defense and escape fines, and possible life imprisonment.

29.   In or about May 8, 2005 PETERSON obtained a HELOC on the subject matter property through CHASE in the amount of $220,000,00. PETERSON consistently and at all times complied with all of the material terms of his HELOC and at all times used it and his residence only for personal, family, and household purposes and never for any commercial, business or any unlawful reason.

30.   That subsequently, CHASE summarily, arbitrarily, capriciously, and unilaterally reduced and suspended Peterson's HELOC by the aforementioned freeze letter dated May 15, 2009.

31.   The CHASE'S freeze letter failed to detail any factual basis for any actual material change in PETERSON'S financial condition, and did not provide him a sound factual basis prior to suspending his credit privileges.

<u>COUNT I</u>

(Declaratory Relief Under TILA and Regulation Z)

32.  PETERSON incorporates the foregoing paragraphs 1 through 31 by reference as if fully set forth herein.

33.  The Truth-in-Lending Act ("TILA") and its implementing regulation (Regulation Z), that establishes rules for HELOC suspensions, reductions, and terminations, prohibited CHASE from changing any of the terms of a mortgage or HELOC — including the credit limit. 15 U.S.C. § 1647(c)(1); 12 C.F.R. § 226.5b(f)(3). There is an exception under TILA and Regulation Z for, *inter alia*, allows lenders, such as CHASE, to suspend or reduce HELOCs only in limited situations, such as where, (1) it reasonably believes based on a sound factual basis ("reasonable belief"), *and* (2) that a consumer will in fact be unable to fulfill the consumer's repayment obligations under the plan because of a material change in the consumer's financial circumstances ("inability") (the "Exception"). 15 U.S.C. § 1647(c)(2)(B); 12 C.F.R. § 226.5b(f)(3)(vi)(A).

34.  That TILA and Regulation Z prohibited CHASE from suspending PETERSON'S account or reducing his credit limit on his HELOCs unless the exception, a reasonable belief and inability for purposes of § 226.5b(f)(3)(vi)(A) are both based on a sound factual basis. This exception requires both a material change in a borrower's financial situation and the creditor's reasonable belief that the borrower will not be able to repay the HELOC account as agreed. 12 C.F.R. pt. 226, Supp. I, commentary to paragraph 226.5b(f)(3)(vi), comment 7. Before reducing the limits of any of its customer's HELOCs, CHASE had an obligation to have a sound factual basis for a "material change" in his "financial condition". Regulation Z permits a lender to suspend or reduce a HELOC account only when the

13

designated circumstances exist, and the regulatory commentary emphasizes that credit privileges must be timely reinstated when those circumstances cease. 12 C.F.R. pt. 226, Supp. I, commentary to paragraph 226.5b(f)(3)(vi), comment 2. When a consumer requests such reinstatement, the association must promptly determine whether the condition allowing the suspension remains in effect. 12 C.F.R. pt. 226, Supp. I, commentary to paragraph 226.5b(f)(3)(vi), comment 4.

35. PETERSON alleges on information and belief that, instead, CHASE knowingly and intentionally used his reported arrest as pretext in order to justify his HELOC account suspension. On information and belief, CASE'S reason was illegal in that it failed to, among other acts or omissions:

(a) knowingly failed to have reasonably belief for the suspension based on a sound factual basis that PETERSON would, in fact, be unable to fulfill the consumer's repayment obligations under the plan because of a material change in the consumer's financial circumstances;

(b) knowingly failed and refused to properly investigate or document its assumptions and conclusions;

(c) knowingly failed and refused to timely reinstate PETERSON'S credit privileges when tit was informed by BRODSKY on his behalf, that those circumstances never existed and/or ceased;

(d) knowingly failed and refused, when by BRODSKY on his behalf, PETERSON requested reinstatement, to as they were required to do, promptly determine whether the condition they purported relied upon allowing the suspension ever existed or remained in effect, and, *inter alia*; and

(e) knowingly failed and refused take other necessary steps to reasonably verify the accuracy of its purported reason

14

for and decision to suspend PETERSON'S HELOC when it knew or should have known that he was languishing in jail, attempting to access his HELOC in order to raise bond and pay for his defense while facing and needing to prepare for trial on said murder charges,

(f) knowingly failed and refused to remove said freeze, reinstate and allow PETERSON use of his HELOC when CHASE learned though discovery in this case that there had been no material change in his financial circumstances.

36.   PETERSON has additionally been harmed because CHASE knowingly failed to disclose information that would permit him to fairly determine the actual factual basis or otherwise challenge its action, including but not limited to:

(a) how and why CHASE determined or defined the terms "material change" and "financial condition";

(b) how and why CHASE determined that they would not lift the suspension, reinstate, or unfreeze his HELOC;

(c) the CHASE'S actual and specific reasons for the reduction of the HELOCs;

(d) the process, procedures, and guidelines pursuant to which CHASE implemented its suspension of his HELOC; and

(e) other necessary information.

37.   Compounding CHASE'S failure to provide such basic information, and providing further disincentive for PETERSON, as a borrower, to challenge its decision, is was CHASE'S practice and policy of requiring him to perform the investigation into whether the purported condition permitting the suspension in the first place. TILA and Regulation Z provide that the burden of reinstating HELOC accounts and credit limits rests with the lender. *See* Commentary to 12 C.F.R. 226.5b(f)(3)(vi)(2). Although TILA and Regulation Z permit lenders such as CHASE to

transfer the burden of seeking reimbursement onto HELOC borrowers, TILA and Regulation Z dictate that once a borrower requests reinstatement, the lender must then investigate the circumstances that purportedly warranted suspension or reduction. *See* Commentary to 12 C.F.R. 226.5b(f)(3)(vi)(4). Only after the lender investigates may the lender charge the borrower bona fide and reasonable costs. *See* Commentary to 12 C.F.R. 226.5b(f)(3)(vi)(3).

38. On information and belief, rather than properly investigate or factually justify their knee-jerk decision to suspend his HELCO, CHASE intentionally shifted onto PETERSON the burden of investigating the facts and having to do with the suspension and refusal to reinstate his HELOC. This was done in an effort to discourage customers, such as PETERSON, from seeking reinstatement of their original credit limits, and this illegal burden shift is particularly successful in discouraging customers from seeking reinstatement when combined with CHASE'S failure to provide specific information to PETERSON that would have helped him assess what, if anything was required by CASE to seek and obtain reinstatement of his HELCO.

39. PETERSON and CHASE have adverse legal interests, and there is a substantial controversy between parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether CHASE'S reduction of his HELCO violated and continues to violate TILA and Regulation Z.

40. That by reason of CHASE'S illegal actions and omissions PETERSON has and will continue to suffer damage in that without access to his HELOC the preparation time for and his ability to have a fair criminal trial will be seriously and irreparably impeded, thus prolonging the length of his confinement, and increasing the likelihood of a possible

16

conviction, given the unlimited resources the State of Illinois and its prosecutors can marshal, and his criminal defense has not been and will continue to be unable, due to the lack of access to his said HELOC to, *inter alia*:

(a) seek out, obtain and employ the services of various expert witnesses to testify at trial regarding the State's purported motive and contradict the states theory of "motive" in order to properly prepare, present, and conduct an effective defense at the criminal trial;

(b) seek out, obtain and employ the services of a biomechanical engineering expert to testify at trial regarding the position and circumstances that PETERSON'S late wife's body was discovered, in order to properly prepare, present, and conduct an effective defense at the criminal trial;

(c) seek out, obtain and employ the services of an independent pathologists, toxicologist, and coroners to testify at trial and verify the lack of drugs in his late wife's body, in order to properly prepare, present, and conduct an effective defense at the criminal trial;

(d) seek out, obtain and employ the services of investigators to locate, interview, and obtain statements and other data and information from key witnesses in order to properly prepare, present, and conduct an effective defense at the criminal trial;

(e) seek out, obtain and employ the services of other various experts as may be needed to consult and testify at trial and verify the lack of drugs in PETERSON'S late wife's body in order to properly prepare, present, and conduct an effective defense at the criminal trial;

(f) seek out, obtain and employ the services of a data and document organization specialist to develop and/or utilize

software and to organize the many tens of thousands of pages of evidence produced by the prosecution into an accessible form usable in order to properly prepare, present, and conduct an effective defense at the criminal trial;

(g)   seek out, obtain and employ needed tests and analysis of testimony and evidence in order to properly prepare, present, and conduct an effective defense at the criminal trial;

(h)   seek out, obtain and employ needed tests and analysis of testimony and evidence in order to properly prepare, present, and conduct an effective defense at the criminal trial;

(i)   seek out, obtain the exhibits, models, diagram, and media devices and materials in order to properly prepare, present, and conduct an effective defense at the criminal trial;

(j)   undertake and conduct such mock pre-trial hearings, *voir dires*, and trials as may be necessary in order to properly prepare, present, and conduct an effective defense at the criminal trial;

(k)   marshal the necessary funds in an effort to meet the existing or a reduced bond; and

(l)   seek out, obtain such other and additional resources as may be necessary and pay for the various other substantial expenses that must be undertaken and expended, in order to properly prepare, present, and conduct an effective defense at the criminal trial.

WHEREFORE PETERSON PRAYS that this Court expedite this cause by reason of his need to obtain prompt relief due to his ongoing incarceration and need to prepare his defense against said murder charges, enter a judgment against CHASE under 27 U.S.C. § 2201 declaring that its arbitrary freeze and reduction of his HELOC credit limit in connection with its letter violates TILA and Regulation Z and that should have been, and should be

granted immediate access to and unfettered use of his HELOC, awarding attorneys' fees under 15 U.S.C. § 1640(a)(3), prejudgment interest, and costs in an amount to be determined at trial, and such other and further relief as may be just and proper in the premises

<u>COUNT II</u>

(Violation of TILA and Regulation Z)

41.   PETERSON incorporates the foregoing paragraphs 1 through 40 by reference as if fully set forth herein.

42.   CHASE knowingly lacked a sufficient factual basis for suspending PETERSON'S HELOC or prohibiting additional extensions of credit. CHASE further lacked a sound factual basis for concluding that a "material change" in PETERSON'S "financial condition" so as to justify suspending his HELCO or prohibiting additional extensions of credit.

43.   CHASE'S suspension of PETERSON'S HELOC secured by his primary residence violated TILA and Regulation Z damaged him. These damages occurred in the form of the increased price of credit, appraisal fees, adverse effects on his credit score, rating and reputation, loss of interest, and other damages including because CHASE knew or should have known of its suspension was not "material change" in his "financial condition" supported by a sound factual basis.

WHEREFORE PETERSON PRAYS that this Court enter a judgment in his favor and against CHASE for actual damages under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), general, compensatory and punitive damages in great excess of $75,000.00, reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3), prejudgment interest and costs in an amount to be determined at trial, and such other and further relief as may be just and proper in the premises.

<u>COUNT III</u>

(Violation of TILA and Regulation Z)

44.   PETERSON  incorporates  the  foregoing  paragraphs  1 through 43 by reference as if fully set forth herein.

45.   Where  a  creditor  prohibits  additional  extensions  of credit or reduces the credit limit, "the creditor shall mail or deliver written notice of the action to each consumer who will be affected. The notice must be provided not later than three business  days  after  the  action  is  taken  and  shall  contain specific  reasons  for  the  action."  Regulation  Z,  12  C.F.R.  § 226.9(c)(3).

46.   That, on information and belief, CHASE'S notice of its suspension  and  reduction  of  PETERSON'S  HELOC  provided  to PETERSON were  pre-textual  and/or  did  not  contain  sufficiently specific  and  lawful  reasons  for  said  action  in  violation of 12 C.F.R. § 226.9(c)(3) and the terms of said HELOC.

47.   The  CHASE'S  Notice  fail  to  provide  PETERSON,  as  a HELOC  customer,  with  enough  valid  information  to  determine whether he should spend the time and resources to challenge the its  decision.  Despite  the  Notice's  own  recognition  that  the customers' HELOC agreements and federal law requires a factually sound  "material  change"  in  "financial  condition"  prior  to  any lender,  such  as  CHASE,  prohibiting  additional  extensions  of credit or reducing the credit limit, the letter was devoid of any  specific  legally  sufficient  reason  and  a  sound  and sufficient factual basis. The freeze letter does not reveal how CHASE  determined  or  defined  "material  change"  in  PETERSON'S "financial  condition"; how  it  would  compute  the  income,  that  he, as a customer, needs so that it would reinstate or unfreeze his HELOC. CHASE and its customer service has been likewise unable and  unwilling  to  provide  this  information  to  PETERSON,  upon

request, or provide inconsistent and incorrect information, thereby rendering any appeals process illusory and futile.

WHEREFORE PETERSON PRAYS that this Court enter a judgment in his favor and against CHASE for actual damages against CHASE under 15 U.S.C. § 1640(a)(1), statutory damages under 15 U.S.C. § 1640(a)(2)(B), general, compensatory and punitive damages in great excess of $75,000.00, reasonable attorneys' fees under 15 U.S.C. § 1640(a)(3), prejudgment interest and costs in an amount to be determined at trial, and such other and further relief as may be just and proper in the premises.

(PENDENT STATE COUNTS)

COUNT IV

(Breach of Contract)

48.   PETERSON incorporates the foregoing paragraphs 1 through 47 by reference as if fully set forth herein.

49.   PETERSON obtained a HELOC from CHASE as aforesaid. The terms of said HELOC constitute a contract between PETERSON and CHASE.

50.   The HELOC contains a term that allows CHASE to suspend or reduce the credit limit. CHASE drafted the HELOC, and it any and all such terms should therefore be construed against it.

51.   PETERSON timely made all payments due to CHASE under the HELCO and otherwise fully performed under his HELOC Agreement with CHASE.

52.   The credit limit under PETERSON'S HELOC was a material term of the contract between him and CHASE.

53.   CHASE materially breached the terms of the PETERSON'S HELOC by so suspending the credit line for his HELOC where no significant "material change" in his "financial condition" has first occurred.

54.   As a result, PETERSON suffered damages in the form,

the increased price of credit, lost interest, attorneys' fees, adverse effects on his credit worthiness, scores, and ratings, and other damages, including but not limited to pay for his defense in a criminal proceeding of which CASE was or should have been fully aware.

WHEREFORE, PETERSON PRAYS that this Court enter a judgment in his favor and against CHASE for general, compensatory and punitive damages in great excess of $75,000.00, reasonable attorneys' fees, prejudgment interest pursuant to 735 ILCS 5/2-1303, costs in an amount to be determined at trial, and such other and further relief as may be just and proper in the premises

## COUNT V

### (Breach of Implied Covenants
### of Good Faith and Fair Dealing)

55. PETERSON incorporates the foregoing paragraphs 1 through 54 by reference as if fully set forth herein.

56. PETERSON obtained a HELOC from CHASE. The terms of said HELOC constituted a contract between PETERSON and CHASE.

57. Implicit in the HELOC agreement were contract provisions that prevented CHASE from engaging in conduct that frustrates the PETERSON'S rights to the benefits of the contract or that would injure his rights to receive the benefits of said HELOC. Likewise, if not explicitly stated, implicit in the HELOC agreement were contract terms that required CHASE to comply with TILA and Regulation Z.

58. The credit limit was a material term of PETERSON'S HELOC. CHASE breached the implied covenant of good faith and fair dealing in the HELOC by arbitrarily suspending the credit lines for PETERSON'S HELOC without first having a sound factual basis for claiming there was a factually sound "material change" in his "financial condition".

59. CHASE further breached the implied covenant of good faith and fair dealing as to PETERSON contained in the HELOC by failing to provide sufficiently specific notice and by failing to provide him, as a customer, with material information used to justify the aforesaid summary suspension. In so doing, CHASE intentional withholding of crucial information, constituted violations of both TILA and Regulation Z.

60. CHASE also breached the covenant of good faith and fair dealing implied in said HELOC by placing the burden of obtaining on PETERSON, rather than requiring a request for reinstatement from the borrower, then performing their own investigation and only charging those *bona fide* fees so incurred. Upon information and belief, CHASE'S shifting of the investigation burden onto PETERSON, as a borrower, and deprivation of critical information, was an intentional contravention of TILA and Regulation Z specifically designed to discourage him, as a borrower, from seeking reinstatement. CHASE'S actions in this regard constituted a breach of the covenant of good faith and fair dealing, as they were designed to frustrate the PETERSON'S rights to receive the full benefits of his HELOC agreement.

61. CHASE'S breach of the implied covenant of good faith and fair dealing and its violations of TILA and Regulation Z caused PETERSON to incur damages in the form price of credit, adverse effects on his credit scores, rating, reputation and the other damages herein set forth.

WHEREFORE, PETERSON PRAYS that this Court enter a judgment in his favor and against CHASE for general, compensatory and punitive damages in great excess of $75,000.00, reasonable attorneys' fees, prejudgment interest there on pursuant to 735 ILCS 5/2-1303, and costs in an amount to be determined at trial,

23

and such other and further relief as may be just and proper in the premises

COUNT VI

(Violation of the Illinois Consumer Fraud and
Deceptive Business Practices Act [815 ILCS 505/2])

62. PETERSON incorporates the foregoing paragraphs 1 through 60 by reference as if fully set forth herein.

63. CHASE'S wrongful acts, as set forth throughout this Complaint, constitute unfair methods of competition, deceptive business practices, misrepresentation, and concealment, suppression or omission of material facts with the intent that consumers will rely on the concealment, and suppression or omission of the material facts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. 815 ILCS 505/2 *et. seq.* ("Consumer Fraud Act").

64. That under the Illinois Consumer Fraud and Deceptive Business Practice Act (hereinafter referred to as "ICFA"), 815 ILCS 505/2, a person or corporation can be held liable for "unfair ... practices" used "in the conduct of any trade or commerce." According to the statute, "[t]he terms 'trade' and 'commerce' mean... offering for sale, sale, or distribution of any services...." 815 ILCS 505/1(f).

65. That CHASE'S unlawful conduct and actions and omissions as alleged above constituted and unfair practice and occurred in commerce and have caused serious and irreparable injury to PETERSON, unless restrained by the Court, will continue to cause further serious injury and irreparable to harmful to consumers like him and unfair and illegal competition.

66. CHASE'S statements regarding the availability of credit through the HELOC were false and likely to deceive a reasonable consumer. Further, CHASE'S statements as to its

24

potential bases for reducing credit limits were false and likely
to deceive a reasonable consumer.

67.  CHASE'S conduct was deceptive and untrue, were without
a sound factual basis, and were inaccurate and unsubstantiated
so as to make its use unfair, deceptive, and readily subject to
manipulation. Upon information and belief, CHASE intentionally
utilized its pretextual excuse for suspending PETERSON'S HELOC
as part of a broad policy to, whenever possible, deprive its
customers credit by a pattern of providing false and misleading
basis for suspending or reducing credit limits. These unfair,
immoral and unscrupulous acts and practices constitute deceptive
and unfair business practices in violation of the Illinois
Consumer Fraud Act.

68.  CHASE'S conduct was also deceptive and unfair because
it deprived PETERSON, as a borrower, critical information needed
to determine whether or how to effectively seek reinstatement of
his HELOC, including that that might be required for such
reinstatement. CHASE'S conduct was further unfair, immoral and
unscrupulous because it shifted the burden of seeking
investigation to PETERSON, as a borrower, in contravention of
TILA and Regulation Z. Upon information and belief, CHASE'S
shifting of the investigation burden onto Peterson, as a
borrower, deprived him critical information, was an intentional
contravention of TILA and Regulation Z specifically designed to
discourage borrowers from seeking reinstatement or otherwise
challenging CHASE'S decisions.

69.  As a direct and proximate result of CHASE'S deceptive,
unfair, unscrupulous and unconscionable practices set forth
above, PETERSON is entitled to actual and compensatory damages,
penalties, attorneys' fees, and costs as set forth in §10(a) of
the Illinois Consumer Fraud Act, 815 ILCS 505/10(a), in an

amount to be determined at trial.

WHEREFORE, PETERSON PRAYS that this Court expedite this cause by reason of his need to obtain prompt relief due to his ongoing incarceration and need to prepare his defense against said murder charges and enter judgment:

A. declaring that the unfair practice in connection with said contracts as alleged herein be adjudged and decreed to be in violation of ICFA;

B. ordering that all payments heretofore made by or on behalf of PETERSON be accounted for, disgorged and refunded to him with prejudgment interest there on pursuant to 735 ILCS 5/2-1303; and

C. awarding him general, compensatory and punitive damages in great excess of $75,000.00, reasonable attorneys' fees, and costs against CHASE in such amount as may be determined at trial, together with such other and further relief as may be just and proper in the premises.

<u>COUNT VII</u>
(Common Law Fraud - Deceit)

70. PETERSON incorporates the foregoing paragraphs 1 through 69 by reference as if fully set forth herein.

71. That on or about May 15, 2009, CHASE mailed or otherwise caused the freeze letter referencing his aforementioned HELOC account Number to be sent to PETERSON as aforesaid.

72. The above representations were intentionally false, and the CHASE knew them to be false when made.

73. The statement that there was a "material change" in PETERSON'S "financial condition" was untrue and pretextual.

74. That at the time the above-identified false statements were made by CHASE'S freeze letter, it knew the above-identified

statements were false.

75.   CHASE made such false statements in order to create a false pretext to enable it to suspend or terminate its HELOC obligations to PETERSON. CHASE intended that PETERSON rely upon the false statements so that it would not be contractually obligated to provide any further credit to PETERSON.

76.   Reliance was unilaterally imposed upon PETERSON by CHASE. When CHASE unilaterally suspended or terminated its HELOC obligations through the making of the false representations identified above, it changed the terms and obligations they owed to PETERSON pursuant to the HELOC it had negotiated with him.

77.   PETERSON was given no opportunity or choice not to rely upon the CHASE'S action, because of its unilaterally changed terms and obligations of his HELOC.

78.   The changes in the terms and obligations under the HELOC imposed by CHASE'S fraudulent actions resulted in a loss of credit that PETERSON had previously bargained for and that it had committed to provide based upon the security provided by the valuation of his home. The loss of credit resulted in real and significant monetary and other damage to PETERSON.

79. That the false statements made by CHASE to PETERSON were known by it to be false when they were made.

80.   In each case, CHASE intended that PETERSON, to whom the false statements were made, would rely on the false statements as a pretext to enable it to suspend or terminate his HELOC.

81.   CHASE imposed reliance upon PETERSON when it unilaterally suspended or terminated its HELOC obligations to him through the making of the false representations identified above. CHASE changed the terms and obligations they owed to PETERSON pursuant to the HELOC it had negotiated with him.

82.   PETERSON was never given an opportunity or choice not to rely upon the CHASE'S actions, because it unilaterally changed the terms and obligations owed to him pursuant to the HELOC and applicable law.

83.   The changes in the terms and obligations owed by CHASE to PETERSON under his HELOC resulted in a loss of credit that he had previously bargained for and that CHASE had committed to provide based upon the security provided by the valuation of his home. The loss of credit resulted in real and significant monetary damage and great emotional distress to PETERSON.

84.   In addition, PETERSON reasonably and justifiably relied on CHASE'S false representations to his detriment by being treated arbitrarily and capriciously so as to justify the its freezing of his HELOC thereby reducing his credit limit.

85.   As an actual, direct, and proximate result of this justifiable reliance on CHASE'S misrepresentations, acts and omissions, PETERSON has sustained direct and consequential monetary damages in the form of attorneys' and other fees and costs.

WHEREFORE, PETERSON PRAYS that this Court enter judgment in his favor and against CHASE for general, compensatory and punitive damages in great excess of $75,000.00, reasonable attorneys' fees, and costs in such amount as may be determined at trial, together with such other and further relief as may be just and proper in the premises.

<u>COUNT VIII</u>
(Unjust Enrichment - Restitution)

86.   PETERSON incorporates the foregoing paragraphs 1 through 85 by reference as if fully set forth herein.

87.   In the alternative, and in the event the Court finds that no contract provision expressly governs the issues raised

herein, or that CHASE has not breached the terms of its HELOC contract, it has knowingly received and retained benefits from PETERSON under circumstances that would render it unjust to allow it to retain such benefits.

88. That by reason of the foregoing, CHASE knowingly received and has been unjustly enriched by retaining and profiting from the use of money that should otherwise have been provided to PETERSON as part of his HELOC. In so doing, CHASE unlawfully, arbitrarily, and inappropriately reduced, suspend, or froze PETERSON'S HELOC, thus allowing it to utilize monies for its own purposes rather than for extending credit to PETERSON as previously promised. It is unjust to allow CHASE to keep such a benefit and profits in light of its actions in violation of TILA and Regulation Z and in light of the significant harm its action caused PETERSON.

89. Additionally, PETERSON has conferred a benefit upon CHASE by paying annual fees to them for his HELOC. CHASE'S receipt and retention, in full, of the annual fees is unfair and unjust in light of its unjust and illegal reduction or freezing of the HELOC accounts of PETERSON denying him the full bargained-for use of his HELOC account.

90. CHASE have been unjustly enriched by failing to refund, and continuing to assess, an annual fee despite illegally reducing and/or suspending his HELOC account of PETERSON thereby preventing his full and expected use thereof.

91. As an actual and proximate result of its actions, CHASE has received and retained a benefit at the expense and to the detriment of PETERSON in the form of the value of the credit unlawfully not extended to him, and collected annual fees.

92. PETERSON seeks damages and disgorgement of all revenue and profit gained through CHASE'S unjust enrichment, plus

interest and attorneys' fees, in an amount to be determined at trial. PETERSON also seeks punitive damages, as CHASE'S actions were willful, deceptive, and made in bad faith.

93. That by reason of the foregoing CHASE'S conduct constituted unjust enrichment.

WHEREFORE, PETERSON PRAYS that this Court enter a judgment in his favor ordering all monies paid to CHASE by or on behalf of him be disgorged and refunded to him with prejudgment interest there on pursuant to 735 ILCS 5/2-1303, that he be awarded reasonable attorneys' fees, and costs as may be determined at trial, together with such other and further relief as may be just and proper in the premises.

<u>COUNT IX</u>

(Declaratory Judgment - 735 ILCS 5/2-701)

94. PETERSON incorporates the foregoing paragraphs 1 through 93 by reference as if fully set forth herein.

95. That by reason of the foregoing PETERSON is entitled to a judicial declaration of his rights pursuant to 735 ILCS 5/2-701 and declaratory relief in connection therewith.

WHEREFORE, PETERSON PRAYS that this Court expedite this cause by reason of his need to obtain prompt relief due to his ongoing incarceration and need to prepare his defense against said murder charges, and a declaratory judgment be entered in his favor and against CHASE pursuant to 735 ILCS 5/2-701, as follows:

A. declaring that CHASE'S illegal activity alleged herein be adjudged and decreed to be in violation PETERSON'S rights under the aforementioned statutes and regulation in such cases made and provided;

B.    declaring that CHASE has a duty to immediately honor, comply with and immediately fund PETERSON the $220,000.00 that he was entitled to draw under his HELOC;

C.    awarding PETERSON attorneys' fees, interest and costs in an amount to be determined at trial;

D.    granting PETERSON such other and further declaratory, equitable, and injunctive relief, including restitution of property gained by the unfair competition alleged herein, that the freeze letter be declared illegal, against public policy, that all payments heretofore made by the pursuant to said contracts and illegal conduct be accounted for, disgorged and refunded to him with prejudgment interest there on pursuant to 735 ILCS 5/2-1303; and an order for accounting of such property, as may be appropriate;

E.    awarding PETERSON such other and further relief, as may be appropriate, necessary, just and proper in the premises.

<u>COUNT X</u>

(Specific Performance)

96.    PETERSON incorporates the foregoing paragraphs 1 through 95 by reference as if fully set forth herein.

97.    That CHASE knew or should have known that actions as alleged above would or might deprive PETERSON the ability to defend himself and oppose a capital offense charge brought by him by the State of Illinois, as he could have, had it not illegally suspended his HELOC, so that he might be unable to utilize such funds to prepare and mount a vigorous and zealous defense, and that if convicted on the felony charges he could well suffer a maximum penalty of a fine in addition to imprisonment for twenty (20) years to life or the death penalty.

98.    That by reason of the forgoing, unless specific performance of the HELOC is ordered, PETERSON will thus suffer

31

irreparable and continuing harm by having been an being illegally denied access and use of his HELCO.

99. That it was reasonably foreseeable, and a trier fact could find, that the CHASE'S breach would cause PETERSON great and irreparable harm by adversely hindering or denying him not only the ability to obtain another HELOC, but the ability to prepare and mount such defense and maintain his choice of private criminal defense counsel and other associated needed resources in connection with his criminal defense.

WHEREFORE, PETERSON prays, that this Court expedite this cause by reason of his need to obtain prompt relief due to his ongoing incarceration and need to prepare his defense against said murder charges, and enter judgment, in the alternative, as follows:

A.   declaring that the unfair practice in connection with the contract alleged herein be adjudged and decreed to be in violation of ICFA;

B.   declaring that CHASE has a duty to immediately honor, comply with and fund PETERSON the $220,000.00 that he was and is entitled to immediately draw funds under his HELOC,

C.   awarding PETERSON general, compensatory and punitive damages against CHASE in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars,

D.   ordering hat all payments heretofore made by or on behalf of PETERSON be accounted for, disgorged and refunded to him with prejudgment interest there on pursuant to 735 ILCS 5/2-1303;

E.   awarding PETERSON civil penalties pursuant to ICFA;

F.   awarding PETERSON costs, disbursements and reasonable attorneys' fees pursuant to ICFA; and

G.   awarded PETERSON such other and further relief, as may be appropriate, necessary, just and proper in the premises.

## COUNT XI

### (Slander of Credit)

100.   PETERSON incorporates the foregoing paragraphs 1 through 99 by reference as if fully set forth herein.

101. That, on information and belief, by reason of the CHASE'S foregoing conduct and in connection therewith its wrongful and illegal suspension of his HELOC was communicated to and made a part of his credit information thereby aversely affecting what had been and would otherwise continue to be PETERSON'S good credit rating and reputation, creditworthiness, and ability to obtain credit.

WHEREFORE, PETERSON PRAYS that this Court enter judgment in his favor and against CHASE for general, compensatory and punitive damages in great excess of $75,000.00, plus reasonable attorneys' fees, costs in such amount as may be determined at trial, and such other and further relief as may be just and proper in the premises.

## COUNT XII

### (Intentional Infliction of Emotional Distress)

102.   PETERSON incorporates the foregoing paragraphs 1 through 101 by reference as if fully set forth herein.

103.   That, on information and belief, CHASE, knowing that PETERSON was criminally charged and confined as above stated and that he would and could suffer the damages and harm above stated by reason of CHASE'S foregoing conduct and as a result its intentional, wrongful and illegal suspension of his HELOC and the damage it would cause him, knowingly, willfully and intentionally caused him to suffer and to continue suffer great, foreseeable, and severe emotional distress.

104.   That CHASE'S conduct of was intentional, extreme and outrageous conduct that exceeded all permissible bounds of decency of a civilized community.

105.   That CHASE knew or should have known and its aforementioned extreme and outrageous conduct exceeded all permissible bounds of decency of a civilized community and could or would cause PETERSON severe emotional distress.

WHEREFORE, PETERSON PRAYS that this Court enter judgment in his favor against CHASE for general, compensatory and punitive damages in great excess of $75,000.00, plus reasonable attorneys' fees, costs in such amount as may be determined at trial, and such other and further relief as may be just and proper in the premises.

JURY TRIAL DEMANDED

PETERSON hereby requests a trial by jury of all issues so triable.

Dated and filed electronically using the United States District Court for Northern District of Illinois "CM/ECF System" this 6th day of May 2010.

Respectfully submitted,

DREW W. PETERSON, Plaintiff,

By /s/ Walter P. Maksym, Jr.
    WALTER P. MAKSYM, JR., his attorney

Walter P. Maksym, Jr.
Attorney for Plaintiff
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: 312-218-4475
e-mail: wmaksym@gmail.com

34

## ATTORNEY'S RULE 11 CERTIFICATION

The undersigned attorney certifies that he has read the foregoing complaint, that to the best of his knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact the same is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

/s/ Walter P. Maksym, Jr.
WALTER P. MAKSYM, JR., Plaintiff's attorney

## PLAINTIFF'S RULE 11 CERTIFICATION

The undersigned certifies that he is the Plaintiff in that above-captioned cause, that he has read the foregoing complaint, that to the best of his knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact the same is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation and that the exhibits attached, if any are true and correct copies of the documents they purport to be.

/s/ Drew W. Peterson
DREW W. PETERSON, Plaintiff

Walter P. Maksym, Jr.
Attorney for Plaintiff
2056 N. Lincoln Avenue
Chicago, IL 60614-4525
Telephone: 312-218-4475
e-mail: wmaksym@gmail.com

35